GREEN, J.
delivered the opinion of the court.
The prisoner was indicted in the circuit court of Van Burén County, for passing the counterfeit resemblance of a ten dollar note of the Bank of Tennessee.
Upon the trial the State introduced Washington Britton, who proved that for some years he had been in the habit of dealing-in, receiving and paying out much money in the town of Mc-Minnville, Tennessee, and elsewhere; and that from the time the Bank of Tennessee went into operation, he had received and paid out many of its notes, and from having received and paid out so many of its notes, he thinks he is acquainted with the hand writing of Henry Ewing, the Cashier, and William Nichol, the President. He never saw either of them write, but be had received its notes from the Bank, and had paid others in, and thinks he is able to distinguish the genuine notes from counterfeits.
Andrew J. Hoodenpile, another witness, stated in substance the same facts as to his knowledge of the handwriting of the Cashier and President of the Bank, and as to his means of judging whether a note was genuine or counterfeit.
Upon this statement, the court permitted these witnesses to he examined in chief, as to whether the note for passing which the defendant was indicted, was counterfeit.
*368 The defendant’s counsel objected to this evidence as incompetent, and now insists that it was improperly admitted.
We think the means of knowledge, disclosed by these witnesses, was sufficient to enable them to form an opinion as to the hand writing of the officers of the Bank.
If a witness has corresponded with a party, or has frequently seen writings acknowledged by him to be genuine, and has thus become acquainted with his handwriting, he is competentto testify thereto.
In this case, the witnesses have often received its notes from the Bank, and paid them to the Bank. Here was an act done equal to an express acknowledgment of handwriting. In paying out the notes there was an assertion of the officers of the Bank, that they were genuine. And, although, both the officers whose signatures are to the notes may not have had a direct agency in making these payments, yet when the witnesses paid its noles to the Bank, and they were received without objection as genuine, it becomes conclusive evidence that they were so.
All that the rule of law contended for requires, is that a witness who is called to prove handwriting, shall be able to show, that he has had such means of knowledge as to furnish a reasonable presumption that he is qualified to form an opinion on the subject. And the opportunity of acquiring such knowledge, mentioned in the books on evidence, such as having seen the party write, having corresponded with him, or seen writings acknowledged 'by him to be genuine, are only illustrations of the principle, and are not to be understood as the only means whereby such knowledge may be acquired. If other means of knowledge, in the view of reason and common sense, will equally afford it, there can be no reason why the statement of such means of information shall not be held to be sufficient, preliminary to an examination in chief in relation to the writing.
We think, therefore, that these witnesses were properly examined as to the genuineness of the note in question.
Objection is also taken to the part of the evidence of these witnesses, wherein they state, that from the general appearance of the note, and particular parts of the engraving, they believed it to be counterfeit.
*369 There is certainly no objection to this proof. The Witnesses had already provedj that they were well acquainted with the genuine notes of this Bank*
If the engraving were unlike the genuine ones, dr the paper were strikingly unlike that upon which the genuine ones were printed, evidence of its spurious character might be thus furnished, though there were no proof as to the signatures. The whole writing and the material on which it is found, may be looked to, in order to ascertain its genuineness, and especially, in questions as to counterfeit Bank notes, is it important to have proof of such facts. It is said there is no evidence, that notes of this Bank circulated as currency.
Hoodenpile says, he has been in the habit of receiving and paying out the notes of this Bank, and that he received and paid out' many of the notes of the Bank. The evidence of Britton is to the same purport. Now this evidence contains the statement of facts, from which the necessary inference is, that the notes of this Bank did circulate as currency.
The witnesses say they paid them out, they had been in the habit of receiving, and paying them out. Such language necessarily implies their circulation as currency. They say they received its notes from the Bank and were in the habit of paying them out.
We know from the public laws, that the Bank of Tennessee is authorized to issue notes, to circulate as currency, and when the notes are issued, and are used by persons paying them out, that is putting them in circulation as currency.
Upon the whole we think there is no error in the record, in this cause, and order that the judgment be affirmed.